

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 24, 2024**

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj-11** |
| **Reorganized Debtor.** | § | |
| ⸻⸻⸻⸻⸻⸻⸻ | § | |
| | § | |
| **DUGABOY INVESTMENT TRUST and** | § | |
| **HUNTER MOUNTAIN INVESTMENT TRUST** | § | **Adv. Pro. No. 23-03038-sgj** |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| **and HIGHLAND CLAIMANT TRUST,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
ADVERSARY PROCEEDING IN WHICH CONTINGENT INTEREST HOLDERS IN
CHAPTER 11 PLAN TRUST SEEK A POST-CONFIRMATION
VALUATION OF TRUST ASSETS**

## I.    INTRODUCTION

Before the court is a motion to dismiss ("Rule 12(b) Motion") the above-referenced adversary proceeding ("Adversary Proceeding").[1]   The Rule 12(b) Motion was filed by the two Defendants named in the Adversary Proceeding:  Highland Capital Management, L.P. ("Highland" or the "Reorganized Debtor") and the Highland Claimant Trust ("Claimant Trust").   Highland obtained confirmation of a chapter 11 Plan[2] on February 22, 2021 (which Plan went effective on August 21, 2021).   The Claimant Trust was established pursuant to the terms of the Plan and the Claimant Trust Agreement approved pursuant thereto.   The Claimant Trust was created for the benefit of "Claimant Trust Beneficiaries," which was defined under the Plan and the Claimant Trust Agreement to be the holders of allowed general unsecured (Class 8) and subordinated claims (Class 9) against Highland.

The Adversary Proceeding was brought more than two-years post-confirmation by Plaintiffs Hunter Mountain Investment Trust ("HMIT") and The Dugaboy Investment Trust ("Dugaboy," and, together with HMIT, the "Plaintiffs").[3]   These two Plaintiffs are controlled by Highland's co-founder and former President and Chief Executive Officer, James D. Dondero ("Dondero").   The Plaintiffs held equity interests (i.e., limited partnership interests) in Highland. Pursuant to the terms of the Highland Plan, Plaintiffs now hold ***unvested contingent interests*** in the Claimant Trust—since the limited partnership interests in Highland were cancelled in exchange for unvested contingent interests in the Claimant Trust.  These contingent interests will vest if, and

---

[1] *The Highland Parties' Motion to Dismiss Complaint to (I) Compel Disclosures about the Assets of the Highland Claimant Trust and (II) Determine (A) Relative Value of Those Assets, and (B) Nature of Plaintiffs' Interests in the Claimant Trust* ("Motion to Dismiss"), Dkt. No. 13.  A memorandum of law in support of the Motion to Dismiss ("MTD Brief") was filed at Dkt. No. 14.

[2] Capitalized terms not defined in this introduction shall be defined later herein.

[3] *See Complaint to (I) Compel Disclosures about the Assets of the Highland Claimant Trust and (II) Determine (A) Relative Value of Those Assets, and (B) Nature of Plaintiff's Interests in the Claimant Trust* ("Complaint"). Dkt. No. 1.

only if, the Claimant Trustee certifies that the Claimant Trust Beneficiaries (i.e., the Class 8 general unsecured claims and Class 9 subordinated claims under the Plan), have been paid in full ***and*** certain other obligations – primarily, the Claimant Trust's significant indemnity obligations – have been satisfied.

In this Adversary Proceeding, Plaintiffs seek: (1) an order from the bankruptcy court compelling the Reorganized Debtor and the Claimant Trustee to disclose certain information about the assets and liabilities remaining in the Claimant Trust, and, if they are compelled to disclose that information, (2) a declaratory judgment regarding the relative value of those assets and liabilities, and (3) if assets exceed liabilities, a declaratory judgment that HMIT's and Dugaboy's unvested contingent interests in the Claimant Trust are likely to vest at some point in the future.

To be clear, it is undisputed that neither HMIT nor Dugaboy are currently Claimant Trust Beneficiaries under the terms of the Plan and Claimant Trust Agreement and that the vesting conditions under the terms of the Plan and Claimant Trust Agreement have not occurred.

Highland and the Claimant Trust filed their Motion to Dismiss, seeking a dismissal, with prejudice, of all three counts of the Complaint.  For the following reasons, the court grants the Motion to Dismiss.

## I.      JURISDICTION

This court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and (O) and 1334.

## II.      BACKGROUND

### A.  *The Bankruptcy Case and the Plan*

Highland was a Dallas-based investment firm that was co-founded in 1993 by Dondero and Mark Okada.  It managed billion-dollar investment portfolios and assets, both directly and indirectly, through numerous affiliates that were owned or controlled by Dondero.  On October

16, 2019 (the "Petition Date"), Highland, with Dondero in control[4] and acting as its CEO, president, and portfolio manager, and facing a myriad of massive, business litigation claims, filed for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The bankruptcy case was transferred to the Northern District of Texas, Dallas Division in December 2019.

Highland, a Delaware limited partnership, had three classes of limited partnership interests (Class A, Class B, and Class C) as of the Petition Date.[5]  The Class A interests were held by the Plaintiff Dugaboy, and also Mark Okada's family trusts, and Strand Advisors, Inc. (the latter of which was an entity wholly owned by Dondero and was also Highland's only general partner). The Class B and C interests were held by the Plaintiff HMIT.[6]

Very shortly after the Petition Date, the official committee of unsecured creditors (the "Committee") threatened to seek the appointment of a chapter 11 trustee due to concerns over and distrust of Dondero, his numerous conflicts of interest, and his history of alleged mismanagement. Later, the United States Trustee actually moved for the appointment of a chapter 11 trustee.  Under the specter of a possible appointment of a trustee, Highland engaged in substantial and lengthy negotiations with the Committee, resulting in a corporate governance settlement approved by this court on January 9, 2020.[7]  As a result of this corporate governance settlement, Dondero relinquished control of Highland and resigned his positions as officer or director of Highland and its general partner, Strand,[8] although he stayed on with Highland as an unpaid portfolio manager.

---

[4] Mark Okada resigned from his role with Highland prior to the Petition Date.

[5] *See Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* ("Disclosure Statement") Art. II(D)4, at 20. Bankr. Dkt. No. 1473.

[6] *Id.*

[7] Bankr. Dkt. No. 339.

[8] Dondero agreed to this settlement pursuant to a stipulation he executed and that was filed in connection with Highland's motion to approve the settlement. *See Stipulation in Support of Motion of the Debtor for Approval of*

Three independent directors ("Independent Directors") were chosen to lead Highland through its

chapter 11 case: James P. Seery, Jr. ("Seery"), John S. Dubel, and retired bankruptcy judge Russell

Nelms. Seery was appointed Highland's Chief Executive Officer and Chief Restructuring Officer

in July 2020.[9]   According to Seery's testimony at various hearings, it was during subsequent

negotiations regarding a plan for Highland that Dondero made a threat to "burn down the place"

if Dondero's own proposed plan terms were not accepted by the company and its creditors.  Indeed,

soon after Highland negotiated compromises with its major creditors in the case (*e.g.,* the

Redeemer Committee of the Crusader Fund; Joshua Terry; Acis; UBS) and began pursuing a plan

supported by those creditors, Dondero and entities under his control began engaging in substantial,

costly, and time-consuming litigation in the Highland case.[10]   As the Fifth Circuit has described

the situation, after Dondero's plans failed, "he and others under his control began to frustrate the

proceedings by objecting to settlements, appealing orders, seeking writs of mandamus, interfering

with Highland's management, threatening employees, and canceling trades between Highland and

its clients."[11]

Highland's negotiations with the Committee eventually culminated in the filing of the *Fifth*

*Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the

---

*Settlement With the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in Ordinary Course,* Bankr. Dkt. No. 338.

[9] Bankr. Dkt. No. 854.

[10] As mentioned earlier, after January 2020, Dondero stayed on at Highland as an unpaid portfolio manager. In October 2020, Dondero resigned from all positions with Highland and its affiliates in response to a demand by the Independent Directors made after Dondero's purported threats and disruptions to the Debtor's operations.

[11] *NexPoint Advisors, L.P. v. Highland Capital Mgt., L.P. (In re Highland Capital Mgt., L.P.),* 48 F.4th 419, 426 (citing *Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Capital Mgmt., L.P.),* Ch. 11 Case No. 19-34054-SGJ11, Adv. No. 20-03190-SGJ11, 2021 WL 2326350, at *1, *26 (Bankr. N.D. Tex. June 7, 2021) where this court "h[eld] Dondero in civil contempt, sanctioning him $100,000, and comparing this case to a 'nasty divorce.'").

"Plan"),[12] which was confirmed[13] in February 2021 over the objections of Dondero and Dondero-controlled entities.  The Plan, which became effective on August 21, 2021 ("Effective Date"), is essentially an "asset monetization" plan pursuant to which the Committee was dissolved, and four new entities were created:  the Reorganized Debtor; a new general partner for the Reorganized Debtor called HCMLP GP, LLC; the Claimant Trust (administered by Seery, its trustee); and a Litigation Sub-Trust (administered by its trustee, Marc Kirschner).  The Claimant Trust owns the limited partnership interests in the Reorganized Debtor, HCMLP GP LLC, and the Litigation Sub-Trust and is charged with winding down Highland over a three-year period by monetizing its assets and making distributions to the "Claimant Trust Beneficiaries," as defined in the Plan and the CTA.  General unsecured claims were classified as Class 8, and subordinated claims were classified as Class 9.  Under the terms of the Plan, the holders of claims in Classes 8 and 9 received as of the Effective Date, in exchange for their claims, beneficial interests in the Claimant Trust and became "Claimant Trust Beneficiaries."  HMIT's and Dugaboy's former limited partnership interests in Highland were classified as Class 10 and Class 11, respectively.  Under the terms of the Plan, these interests were cancelled in exchange for ***unvested*** contingent interests in the Claimant Trust ("Contingent Trust Interests") that will vest if, and only if, the Claimant Trustee certifies that the Class 8 general unsecured claims and Class 9 subordinated claims have been paid in full, all disputed claims in Classes 8 and 9 have been resolved, ***and*** certain other obligations – primarily, the Claimant Trust's significant indemnity obligations – have been satisfied.[14]  In other

---

[12] Bankr. Case Dkt. No. 1808.

[13] The Plan was confirmed on February 22, 2021. *See Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* ("Confirmation Order"). Bankr. Dkt. No. 1943.

[14] *See generally* Plan, Arts. III & IV.

words, HMIT and Dugaboy will become "Claimant Trust Beneficiaries" if, and only if, the vesting

conditions occur.

### B. Information Rights under the CTA

The Claimant Trust is a Delaware statutory trust established pursuant to the terms of that

certain *Claimant Trust Agreement* ("CTA"), effective August 11, 2021, for the benefit of Claimant

Trust Beneficiaries, which are defined in the CTA to be[15]

> the Holders of Allowed General Unsecured Claims, Holders of Allowed
> Subordinated Claims, and, only upon certification by the Claimant Trustee that the
> Holders of such Claims have been paid indefeasibly in full plus, to the extent
> applicable, post-petition interest at the federal judgment rate in accordance with the
> terms and conditions set forth herein, Holders of Allowed Class B/C Limited
> Partnership Interests, and Holders of Allowed Class A Limited Partnership
> Interests.

Under the clear terms of the CTA, information rights are limited, and the Claimant Trustee has no

duty to provide an accounting of the Claimant Trust's assets to any party, including the Claimant

Trust Beneficiaries.[16] The CTA grants limited information rights solely to a "Claimant Oversight

Board"[17] and the Claimant Trust Beneficiaries:[18]

> The Claimant Trustee shall provide quarterly reporting to the Oversight Board and
> Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the
> balance of Cash held by the Claimant Trust (including in each of the Claimant Trust
> Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-

---

[15] CTA § 1.1(h). The CTA was expressly incorporated into and is a part of the Plan. *See* Confirmation Order ¶ 25, at 27; Plan Art. IV(J). The final form of the CTA was filed with the court at docket number 1811-2, as modified by docket number 1875-4.

[16] CTA § 3.12(a) ("Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any accounting . . . ."); § 5.2 ("The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets *or to require an accounting*.") (emphasis added).

[17] "Oversight Board" was defined in the CTA as "the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan. Subject to the terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker."

[18] CTA § 3.12(b).

determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

Nothing in the Plan or the CTA grants any other information rights, and, in fact, the CTA makes clear that the Claimant Trust Beneficiaries do not have any information rights outside of those limited information rights set forth in the CTA,[19] which do not include rights to the granular asset and subsidiary level information that the Plaintiffs are asking for in their Complaint (as later further discussed).

As earlier noted, the Claimant Trust Beneficiaries are defined in the CTA to be only the holders of allowed Class 8 general unsecured claims and allowed Class 9 subordinated claims unless and until the Contingent Trust Interests held by the holders of the former limited partnership interests (classified in Classes 10 and 11 under the Plan) vest, at which point, the Class 10 and Class 11 claimants will become Contingent Trust Beneficiaries.[20] The CTA specifically provides that the holders of Contingent Trust Interests "shall not have any rights under this Agreement" and will not "be deemed 'Beneficiaries' under this Agreement," "unless and until" they vest in accordance with the Plan and the CTA and the Claimant Trustee files with the Bankruptcy Court a certification that all holders of general unsecured claims have been indefeasibly paid in full,

---

[19] CTA § 5.10(a) ("The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).").

[20] *See* CTA § 1.1(h); Plan Art. I.B.27.

including, as to Class 8 claims, "all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the 'GUC Payment Certification')."[21]

### C. *The Complaint and Motion to Dismiss*

#### 1. *The Complaint*

On May 10, 2023, HMIT and Dugaboy filed the Complaint in this Adversary Proceeding, asserting one claim for equitable relief and, if the court grants the request for equitable relief, two claims for declaratory relief.

In Count I,[22] entitled "First Claim for Relief - Disclosures of Claimant Trust Assets and Request for Accounting," Plaintiffs seek an order compelling Highland and the Claimant Trust "to provide information regarding the Claimant Trust assets, including the amount of cash and the remaining non-cash assets, and details of all transactions that have occurred since the [alleged] wall of silence was erected, and all liabilities."[23]  Plaintiffs acknowledge in their Complaint that, under the terms of the Plan and the CTA, they are not entitled to the information they seek:  While "[t]he Plan requires the Claimant Trustee to determine the fair market value of the Claimant Trust Assets as of the Effective Date and to notify the applicable Claimant Trust Beneficiaries of such a valuation, as well as distribute tax information to Claimant Trust Beneficiaries as appropriate[,][24] . . . *no like information regarding valuation of the Claimant Trust Assets is available to Plaintiffs as holders of Contingent Claimant Trust Interests* . . . ."[25]  Thus, Plaintiffs seek equitable relief

---

[21] *See* CTA § 5.1(c).

[22] For ease of reference, the court will refer to the Plaintiffs' "First Claim for Relief," "Second Claim for Relief," and "Third Claim for Relief" as Count I, Count II, and Count III, respectively.

[23] Complaint ¶¶ 82-88.

[24] *Id.* ¶ 75 (citing Plan, Art. IV(B)(9)).

[25] *Id.* ¶ 76.

in Count I – an order compelling the Highland Parties to disclose information that Plaintiffs admit

they are not otherwise entitled to under the terms of the Plan and the CTA.

In Count II, entitled "Second Claim for Relief – Declaratory Judgment Regarding Value of

Claimant Trust Assets," Plaintiffs seek a declaratory judgment and "determination from the Court

of the relative value of the Claimant Trust assets compared to the bankruptcy estate obligations,"

"[o]nce Defendants are compelled to provide information about the Claimant Trust assets."[26]

Finally, in Count III, entitled "Third Claim for Relief – Declaratory Judgment and

Determination Regarding Nature of Plaintiffs' Interests," the Plaintiffs seek a declaratory

judgment and determination, "[i]n the event that the Court determines that the Claimant Trust

assets exceed the obligations of the bankruptcy estate in an amount sufficient so that all Allowable

Claims may be indefeasibly paid . . . that the conditions are such that their Contingent Claimant

Trust Interests are likely to vest into Claimant Trust Interests, making them Claimant Trust

Beneficiaries."[27]   HMIT and Dugaboy, by asking the court for a declaratory judgment that "the

conditions are such that their Contingent Claimant Trust Interests *are likely to vest* into Claimant

Trust Interests, making them Claimant Trust Beneficiaries"[28] (if the court first grants the equitable

relief requested in Count I and the declaratory relief in Count II), admit and acknowledge that they

are *not* Claimant Trust Beneficiaries and that their Claimant Trust Interests *have not vested* under

the terms of the Plan and CTA.  In fact, HMIT and Dugaboy clarify in footnote 6, with respect to

Count III, that "[they] do not ask the Court to determine that they are Claimant Trust Beneficiaries

or otherwise to convert their contingent interests into non-contingent interests[,]" and they

---

[26] *Id.* ¶¶ 89-92, at 26. The court notes that Plaintiffs' request for declaratory relief in Count II is predicated on the court granting the equitable relief sought in Count I.

[27] *Id.* ¶¶ 93-95, at 27.  The court notes that Plaintiffs' request for declaratory relief in Count III is predicated on the court granting the declaratory relief sought in Count II, which (as noted) is, in turn, predicated on the court granting the equitable relief sought in Count I.

[28] *Id.* ¶ 94, at 27 (emphasis added).

acknowledge that "[a]ll of that must be done according to the terms of the Plan and the Claimant

Trust Agreement."[29]

### 2. *The Valuation Motion, Precursor to the Complaint*

This is not the first time Plaintiffs have sought a valuation and accounting from the

Claimant Trustee.  In fact, the Complaint was filed after two prior efforts by the Plaintiffs to seek

a valuation and accounting for the purported purpose of having the court determine that the

Claimant Trust assets exceeded liabilities such that they were "in the money" and therefore, they

argued, their Contingent Trust Interests were likely to vest in the near future.  The first time was

via a motion[30] that Dugaboy (with the support of HMIT)[31] filed in June 2022, that this court

denied[32] on the ground that it was procedurally defective – that the claims for equitable and

declaratory relief sought therein must be brought as an adversary proceeding.  Specifically, this

court held that, in asking the court to determine whether Dugaboy was "in the money" and whether

"its status as a holder of a 'Contingent Trust Interest' [would] soon spring into the status of a

'Claimant Trust Beneficiary,'" the Valuation Motion was asking "for the court to ***determine*** the

***extent*** of Dugaboy's ***interest*** in the ***property*** in the Creditor's Trust," which is a "proceeding to

---

[29] *Id.* ¶ 94 n.6, at 27.

[30] On June 30, 2022, Dugaboy filed a *Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust* in which Dugaboy sought "a determination by this Court of the current value of the estate and an accounting of the assets currently held the [sic] Claimant Trust and available for distribution to creditors" and,  on September 21, 2022, a *Supplemental and Amended Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust* in which Dugaboy further stated that "the Court should conduct an evidentiary hearing and require disclosure by the Reorganized Debtor and Claimant Trustee of the value of the estate and all assets held by Claimant Trust that are available for distribution to creditors and residual equity holders." (together, the "Valuation Motion").  In the Valuation Motion, the movants sought a determination of the value of the assets of the Claimant Trust and the entry of "an order: (i) finding that Dugaboy has standing in these bankruptcy proceedings under 11 U.S.C. § 1109(b), Delaware trust law, and Article III of the United States Constitution; and (ii) setting an evidentiary hearing to ascertain the assets currently available for distribution to allowed claimants, to determine the current value of those assets, and to determine whether there is a potential for settling the estate now . . . . "

[31] HMIT filed a *Limited Response in Support of Certain Requested Relief* on August 24, 2022.

[32] *See Order Denying Motion [DE #3383] and Supplemental Motion [DE #3533] of Dugaboy Investment Trust Due to Procedural Deficiency:  Adversary Proceeding is Required* ("Order Denying Valuation Motion"), entered on December 20, 2022. Bankr. Dkt. No. 3645.

determine the validity, priority, or extent of . . . [an] interest in property" under Fed. R. Bankr. P. 7001(2) that must be brought as an adversary proceeding.[33]  Additionally, the court held that the movants' request for the court to make a determination of the current value of the estate and for an accounting of the Claimant Trust assets was a request for equitable relief that was not provided for in the Plan, and that such a request must be brought via an adversary complaint pursuant to Fed. R. Bankr. P. 7001(7).[34]  Finally, the court held that the request in the Valuation Motion clearly was requesting a declaratory judgment as to the value of assets, the extent of Dugaboy's and HMIT's interests in assets, and ultimately, "a declaration as to Dugaboy's standing" that should be brought as an adversary proceeding under the terms of Fed. R. Bankr. P. 7001(9) as "a proceeding to obtain declaratory judgment relating to any of the foregoing [types of procedures listed in Rule 7001]."[35]  Accordingly, the court denied the Valuation Motion "for procedural deficiency[,] without prejudice to the filing of an adversary proceeding."[36]

Next, Dugaboy and HMIT filed a motion seeking leave from this court to file the Complaint, pursuant to the "Gatekeeper Provisions" of the court's prior orders and the Plan (which have been discussed at length in various Highland opinions),[37] but then withdrew the motion for leave (the "Withdrawn Motion for Leave"), after Highland agreed at a status conference held on April 24, 2023 that leave of court was not necessary for the filing of this particular Adversary

---

[33] Order Denying Valuation Motion, 4.

[34] *Id.* Fed. R. Bankr. P. 7001(7) states that "a proceeding to obtain an injunction or other equitable relief, except when a . . . chapter 11 plan provides for the relief" is an adversary proceeding governed by Bankruptcy Rules 7001 *et seq.*

[35] *See id.* at 6 (quoting Fed. R. Bankr. P. 7001(9)).

[36] *Id.* at 6.

[37] *E.g., NexPoint Advisors, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.),* 48 F.4th 419, 439 (5th Cir. 2022) (Fifth Circuit upheld "Gatekeeper Provisions" approved by the bankruptcy court in this case, that required persons to obtain leave of the bankruptcy court before initiating action against certain parties).

Proceeding.[38]  Plaintiffs then filed the Complaint that initiated this Adversary Proceeding on May 10, 2023.

3.  *Meanwhile, HMIT Files Gatekeeper Motion for Leave to File a Different Adversary Proceeding against the Claimant Trustee and Others Regarding Claims Trading*

Meanwhile, HMIT filed a separate *Emergency Motion for Leave to File Verified Adversary Proceeding* ("HMIT Motion for Leave Regarding Claims Trading"),[39] which was later supplemented and modified.[40]  HMIT's Motion for Leave Regarding Claims Trading should not be confused with its (and Dugaboy's) earlier Withdrawn Motion for Leave, just discussed.  In the HMIT Motion for Leave Regarding Claims Trading, it sought leave pursuant to the Gatekeeper Provisions to sue Highland, Seery (i.e., the Claimant Trustee), and certain purchasers of large unsecured claims based upon allegations of "insider trading" and breach of fiduciary duty.  A hearing was held on the HMIT Motion for Leave Regarding Claims Trading, following which the court took the matter under advisement.

While the matter was pending under advisement, Dondero and certain of his controlled entities (the "Dondero Parties") filed a *Motion to Stay and to Compel Mediation* (the "Mediation Motion"),[41] which was granted, in part, on August 2, 2023.[42]  In compliance with an agreed-upon court order[43] and in furtherance of mediation, Highland filed a *pro forma* adjusted balance sheet

---

[38] In confirming that Highland had agreed that a gatekeeper motion would not be necessary "since the adversary would just be seeking a valuation and not monetary or other relief," Highland's counsel reported that Highland "does not believe [HMIT] or Dugaboy is entitled to any information whatsoever" and that "[t]hey certainly have no legal right to the information [which is] why they have to pursue . . . an equitable claim." Transcript of April 24, 2023 Status Conference, 4:7-23. Bankr. Dkt. No. 3765.

[39] Bankr. Dkt. No. 3699 (filed on March 28, 2023).

[40] *See* Bankr. Dkt. Nos. 3760, 3815, and 3816.

[41] Bankr. Dkt. No. 3757.

[42] Bankr. Dkt. No. 3897.

[43] Bankr. Dkt. No. 3870.

("Pro Forma Adjusted Balance Sheet") for the Claimant Trust,[44] which disclosed a May 31, 2023 point-in-time $152 million in assets (of which only $37 million was cash or restricted cash) and $130 million in liabilities, for a total equity value of $22 million. The information disclosed on the Pro Forma Adjusted Balance Sheet was consistent with information that had already been filed in the Bankruptcy Case in certain "Post-Confirmation Reports" as of April 2023.[45] Highland and the Claimant Trustee represent that the Post-Confirmation Reports were "enhanced" and publicly filed to provide interested parties substantially more information than was required, and that these disclosures should have resolved any good faith dispute around receiving sufficient information with which to make a global settlement offer.[46] In any event, the Pro Forma Adjusted Balance Sheet and Post-Confirmation Reports are now central to Highland and the Claimant Trustee's "mootness" argument later discussed herein.

On August 25, 2023, the court issued a 105-page memorandum opinion and order denying HMIT's Motion for Leave Regarding Claims Trading ("Order Denying Leave to Bring Claims Pertaining to Claims Trading")[47] on multiple grounds, including on the bases that: (a) HMIT lacked constitutional standing to bring the claims; (b) even if it had constitutional standing, it lacked prudential standing under Delaware trust law to bring the claims; and (c) the proposed claims also were not "colorable" claims that the court, pursuant to its gatekeeping function under the Gatekeeper Provisions, should allow HMIT to bring. The court found, among other things, that HMIT was not a "Claimant Trust Beneficiary" and not a "beneficial owner" of the Claimant Trust. The court further determined that HMIT should not be treated as a "Claimant Trust

---

[44] Bankr. Dkt. No. 3872 (filed July 6, 2023).

[45] *See* Bankr. Dkt. Nos. 3756 and 3757 ("Post-Confirmation Reports").

[46] MTD Brief ¶ 20, at 10.

[47] Bankr. Dkt. No. 3904.

Beneficiary" after both "considering the current value of the Claimant Trust Assets" and the allegations of wrongful conduct by the Claimant Trustee, as the court "does not have the power to equitably deem HMIT's Contingent Trust Interest to be vested."  The court noted that "HMIT's status as a 'beneficiary' of the Claimant Trust is defined by the CTA itself, pure and simple," and it was undisputed that HMIT's Contingent Trust Interest had not vested yet under the terms of the Plan and the CTA.

On September 8, 2023, HMIT filed a motion to reconsider ("HMIT's Motion to Reconsider Lack of Standing")[48] the Order Denying Leave to Bring Claims Pertaining to Claims Trading. HMIT argued that the court should reconsider its ruling because the Pro Forma Adjusted Balance Sheet, filed in July 2023 (after the court took the HMIT Motion for Leave Regarding Claims Trading under advisement, but before the court issued its August 2023 Order Denying Leave to Bring Claims Pertaining to Claims Trading, established that (1) the value of the Claimant Trust assets exceeded liabilities; (2) HMIT was "in the money"; and (3) its unvested Contingent Trust Interest was likely to vest and, therefore, HMIT had both constitutional and prudential standing as a Claimant Trust Beneficiary to bring the proposed claims.

On October 6, 2023, the court entered an order denying reconsideration ("Order Denying HMIT's Motion to Reconsider Lack of Standing"),[49] finding that the Pro Forma Adjusted Balance sheet did not "demonstrate that HMIT's contingent interest [wa]s 'in the money,'" noting that HMIT d[id] not give proper attention to the voluminous supplemental notes" in the Pro Form Adjusted Balance Sheet that are "integral to understanding the numbers therein."[50]  In addition

---

[48] Bankr. Dkt. No. 3905.

[49] Bankr. Dkt. No. 3936.

[50] Order Denying HMIT's Motion to Reconsider Lack of Standing, 3 (citing Notes 5 and 6 of the Balance Sheet, which show that Highland will operate at an "operating loss prospectively," and that the administrative expenses and legal fees continue to deplete assets, with "significant and widespread litigation result[ing] in massive indemnification obligations, as well as massive, continuing legal fees and expenses").

this court also found that the Pro Forma Adjusted Balance Sheet did not constitute "newly discovered evidence" because it did not contain information that was materially different from the information disclosed in the Post-Confirmation Reports, filed three months earlier.[51]

### 4. *The Rule 12(b) Motion*

As noted earlier, this Adversary Proceeding was briefly stayed pending a court-ordered[52] mediation that ultimately proved to have been unsuccessful.[53] Then, on November 22, 2023, Highland and the Claimant Trustee filed their Rule 12(b) Motion that is now pending before the court.[54]

In their Rule 12(b) Motion, Highland and the Claimant Trustee seek a dismissal of Counts I and III pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure[55] (made applicable herein pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure[56]) for ***lack of subject matter jurisdiction***—specifically, Counts I and III based on ***mootness***, and Count III based on the additional ground that Plaintiffs seek an ***impermissible advisory opinion.***   Thus, there is no ***justiciable controversy*** with respect to either of these counts.   In addition to the lack of subject matter arguments, Highland and the Claimant Trustee also seek dismissal of Count III on the basis that the Plaintiffs are ***collaterally estopped*** from bringing the claim for declaratory relief.  Finally,

---

[51] *Id.* at 2-3.

[52] See, Bankr. Dkt. No. 3879, which was entered on August 2, 2023, granting, in part, the April 20, 2023 *Motion to Stay and to Compel Mediation* [Bankr. Dkt. No. 3752] filed by Dondero and certain of his affiliates in the main bankruptcy case.

[53] *See Joint Notice of Mediation Report* (filed on November 7, 2023). Bankr. Dkt. No. 3964.

[54] *See Order Approving Stipulation and Proposed Scheduling Order* (entered on November 21, 2023). Dkt. No. 12.

[55] Hereinafter, the court shall refer to a rule of the Federal Rules of Civil Procedure as "Rule ___."

[56] Hereinafter, the court shall refer to a rule of the Federal Rules of Bankruptcy Procedure as "Bankruptcy Rule ___."

the Highland Parties seek dismissal of all three counts pursuant to Rule 12(b)(6) (made applicable

herein by Bankruptcy Rule 7012) for ***failure to state a claim upon which relief can be granted***.[57]

The court has considered the Rule 12(b) Motion, HMIT's and Dugaboy's response[58] in

opposition, and the reply thereto.[59]   Oral arguments were heard on February 14, 2024, following

which this court took the matter under advisement.[60]   Having considered all of this, the undisputed

facts set forth in the Complaint, and certain facts of which this court takes judicial notice, and for

the following reasons, this court concludes that:  (a) it does not lack subject matter jurisdiction

over Count I of the Complaint but that HMIT and Dugaboy have failed to state a claim upon which

relief can be granted as to Count I, and thus, Count I should be dismissed pursuant to Rule 12(b)(6);

(b) that Count II of the Complaint is not justiciable and that, pursuant to Rule 12(b)(1) and Rule

12(h)(3), Count II of the Complaint should be dismissed for lack of subject matter jurisdiction;

and, (c) Count III of the Complaint is not justiciable and that, pursuant to Rule 12(b)(1), Count III

of the Complaint should be dismissed for lack of subject matter jurisdiction.

## III.   CONCLUSIONS OF LAW

### A.  *Legal Standards*

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court

should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).  "Moreover, when

a complaint could be dismissed for both lack of jurisdiction and failure to state a claim, the court

---

[57] *See generally* MTD Brief, 11-25.

[58] *The Dugaboy Investment Trust and Hunter Mountain Investment Trust's Response to the Highland Parties' Motion to Dismiss Complaint to (I) Compel Disclosures about the Assets of the Highland Claimant Trust and (II) Determine (A) Relative Value of Those Assets, and (B) Nature of Plaintiffs' Interest in the Claimant Trust* ("Response"). Dkt. No. 17.

[59] *The Highland Parties' Reply in Further Support of Motion to Dismiss Complaint* ("Reply"). Dkt. No. 21.

[60] A transcript of the February 14 hearing was filed on February 20, 2024. Dkt. No. 25.

should dismiss only on the jurisdictional ground under Rule 12(b)(1), without reaching the questions of failure to state a claim under Rule 12(b)(6)"—a "practice [that] prevents courts from issuing advisory opinions." *Crenshaw-Logal v. City of Abilene, Texas*, 436 F. App'x 306 (5th Cir. 2011) (cleaned up). "The practice also prevents courts without jurisdiction 'from prematurely dismissing a case with prejudice.'" *Id.* (quoting *Ramming,* 281 F.3d at 161). Thus, the court will address the Rule 12(b)(1) issues and, then, to the extent the court finds that it has subject matter jurisdiction over any of the claims asserted by the Plaintiffs, the court will address the separate collateral estoppel argument and whether the Plaintiffs have failed to state a claim upon which relief can be granted.

1.   *Rule 12(b)(1) – Lack of Subject Matter Jurisdiction*

As noted, the Defendants argue that the court lacks subject matter jurisdiction over Plaintiffs' claims asserted in Counts I and III of their Complaint, and, therefore, they must be dismissed pursuant to Rule 12(b)(1). The court notes that, pursuant to Rule 12(h)(3), the court "must dismiss the action" "if [it] determines at any time that it lacks subject matter jurisdiction," whether the issue is raised by a party or *sua sponte* by the court. This is so because federal courts have a "constitutional duty . . . to decline subject matter jurisdiction where it does not exist—and that is so whether the parties challenge Article III standing or not." *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022).

Under Article III of the Constitution, a federal court "may only adjudicate actual, ongoing controversies." *Shemwell v. City of McKinney, Texas*, 63 F.4th 480, 483 (5th Cir. 2023) (citing *Honig v. Doe*, 484 U.S. 305, 317 (1988). and thus "[w]hether a case or controversy remains live throughout litigation is a jurisdictional matter." *Id.* (citations omitted). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). As noted by the Supreme

Court, "the doctrines of [constitutional standing,] mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language." *Id.* at 352 (citations omitted). The justiciability requirement found in Article III forms the basis of the overarching and, at times, overlapping well-settled rule that federal courts are not permitted to issue advisory opinions. *See Su v. F Elephant, Inc. (In re TMT Procurement Corp.)*, No. 21-20146, 2022 WL 38985, at *2 (5th Cir. Jan. 4, 2022) ("'[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions,' and parties must articulate 'concrete legal issues, presented in actual cases, not abstractions.'") (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947))). The Fifth Circuit in *Shemwell*[61] recently expounded on the "interplay among the justiciability doctrines" that are "rooted in the Constitution":

> Our justiciability doctrines – including mootness – are rooted in the Constitution. Under Article III of the Constitution, this court may only adjudicate actual, ongoing controversies. Accordingly, whether a case or controversy remains live throughout litigation is a jurisdictional matter. Reframed in the familiar taxonomy of standing and ripeness, this means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. Or, as the Court has sometimes articulated the interplay among the justiciability doctrines, standing generally assesses whether the [requisite] interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings.

The Supreme Court has interpreted the "cases" and "controversies" language in Article III "to demand that an actual controversy be extant at all stages of review, not merely at the time the complaint is filed," and, thus, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160-161 (2016)

---

[61] 63 F.4th at 483.

(cleaned up); *see also Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) ("Mootness is the doctrine of standing in a time frame.  The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).") (cleaned up).  "A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald,* 577 U.S. at 161 (cleaned up).  In other words, "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purpose of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" and "no matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (cleaned up).

As alluded to above, ripeness is another justiciability doctrine that originates in Article III's "case" or "controversy" requirement. *See also Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967) ("Ripeness is a constitutional prerequisite to the exercise of jurisdiction.")).  "Ripeness 'separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review.'" *In re Boyd Veigel, P.C.*, 575 F. App'x 393, 396 (5th Cir. 2014) (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) and citing and quoting *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947) on the doctrine of ripeness).  The Fifth Circuit set forth the standard for determining whether a dispute is ripe for adjudication in *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583 (5th Cir. 1987):  "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. . . . A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if

further factual development is required." *Orix*, 212 F.3d at 895 (quoting *id.* at 586-87) (additional citations omitted).

As noted by the *Orix* court, "[m]any courts have recognized that applying the ripeness doctrine in the declaratory judgment context presents a unique challenge." When considering a declaratory judgment action (and Plaintiffs here are seeking declaratory relief in Counts II and III), the court must first determine whether the action is justiciable, as the court must do in connection with all claims for relief. Under the federal Declaratory Judgment Act, "any court of the United States" is authorized to "declare the rights and other legal relations" of parties in "a case of actual controversy." 28 U.S.C. § 2201; Fed. R. Civ. P. 57; *see also Texas Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 534 (5th Cir. 2012). "That controversy must be of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Id.* (cleaned up).[62] The "unique challenge" that applying the ripeness doctrine to requests for declaratory judgment presents arises from the fact that declaratory judgments are "typically sought before a completed 'injury-in-fact' has occurred," *Orix*, 212 F.3d at 896 (quoting *Foster*, 205 F.3d 851, 857 (5th Cir. 2000)), and, "declaratory actions contemplate an 'ex ante determination of rights' that 'exists in some tension with traditional notions of ripeness.'" *Orix*, 212 F.3d at 896 (quoting *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir. 1994)). Notwithstanding this tension that exists in applying the justiciability requirements to declaratory judgment actions, "a declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Id.* "Thus, courts will not grant declaratory judgments unless the suit is ripe for review." *Boyd Veigel*, 575 F. App'x at 396 (citing *Foster*, 205 F.3d at 857); *see also Mitchell*, 330 U.S. at 89 ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory

---

[62] The Fifth Circuit "interprets the § 2201 'case or controversy' requirement to be coterminous with Article III's 'case or controversy' requirement." *Id.* (quoting *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006)).

opinions.  For adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions are requisite.  This is as true of declaratory judgments as any other field.") (cleaned up).

In addressing the ripeness doctrine in the declaratory judgment context, the Fifth Circuit has stated that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *Boyd Veigel*, 575 F. App'x at 396 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)), and that "[w]hether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis. *Orix*, 212 F.3d at 896 (citations omitted). "The controversy must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Val-Com Acquisitions Tr. v. Chase Home Fin., L.L.C.*, 434 F. App'x 395, 395-96 (5th Cir. 2011) (cleaned up).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, so the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Shemwell v. City of McKinney, Texas*, 63 F.4th 480, 483 (5th Cir. 2023) (citing *id.*) (cleaned up) *see also Val-Com*, 434 F. App'x at 396 ("The plaintiffs have the burden of establishing the existence of an actual controversy under the [Declaratory Judgment] Act.").  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

2. *Rule 12(b)(6) – Failure to State a Claim upon which Relief Can Be Granted*

As noted, Highland and the Claimant Trust also argue that all three counts of the Complaint should be dismissed pursuant to Rule 12(b)(6), made applicable herein by Bankruptcy Rule 7012, because Plaintiffs have failed "to state a claim upon which relief can be granted." To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "When well-pleaded facts fail to meet th[e] [*Twombly*] standard, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. "In ruling on a Rule 12(b)(6) motion to dismiss, the court cannot look beyond the pleadings and must accept as true those well-pleaded factual allegations in the complaint," *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (cleaned up), but it is "not bound to accept as true a legal conclusion couched as factual allegation." *Randall D. Wolcott MD PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (cleaned up). The court "may also consider matters of which it may take judicial notice, and it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Hall v. Hodgkins*, 305 F. App'x at 227 (cleaned up). Dismissal is proper under Rule 12(b)(6), if, after taking the facts alleged in the complaint as true, "it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks." *Test*

23

*Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005) (quoting *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995)).

    3.   *Collateral Estoppel*

        Highland and the Claimant Trust also argue that Plaintiffs' claims for declaratory relief asserted in Count III should be dismissed for the additional reason that Plaintiffs are collaterally estopped from bringing the claim.  Collateral estoppel, or issue preclusion, is a preclusive doctrine that falls under the umbrella of the res judicata doctrine, which affords preclusive effect to final judgments, orders, and decrees of a federal court, including those of bankruptcy courts. *See In re Reddy Ice Holdings, Inc.*, 611 B.R. 802, 808 (Bankr. N.D. Tex. 2020) (quoting *Test Masters*, 428 F.3d at 571 ("The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion.") and citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501-02 (2015)).  Whereas "claim preclusion, or true res judicata, precludes parties from relitigating claims or causes of action that were or could have been raised in earlier litigation," *id.*, issue preclusion, or collateral estoppel, "prevents the same parties or their privies from relitigating [an issue of fact or law] . . . when: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" *Bradberry v. Jefferson Co., Texas*, 732 F.3d 540, 548 (5th Cir. 2013) (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)); *see also In re Reddy Ice*, 611 B.R. at 809-10 ("To establish collateral estoppel under federal law one must show:  (1) that the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.") (quoting *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009)).  "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two

doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *In re Reddy Ice*, 611 B.R. at 808 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). Although as a general rule res judicata must be pled as an affirmative defense, Fed. R. Bankr. P. 7008; Fed. R. Civ. P. 8(c)(1), "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x at 227-28.[63]

### B. Application of the Legal Standards Here

#### 1. Count I – Disclosure and Accounting

**a) Plaintiffs' equitable claim for disclosure and accounting in Count I cannot be considered "moot"; Defendants' motion to dismiss Count I pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be denied.**

As earlier noted, in Count I of their Complaint, Plaintiffs seek an order compelling Highland and the Claimant Trust "to provide information regarding the Claimant Trust assets, including the amount of cash and the remaining non-cash assets, and details of all transactions that have occurred since the wall of silence was erected, and all liabilities."[64] Plaintiffs, as holders of Contingent Trust Interests, have neither a contractual right to an accounting of the Claimant Trust assets nor a contractual right to whatever limited information rights under the terms of the Plan and CTA that are afforded to the Claimant Trust Beneficiaries. Plaintiffs acknowledge that they are not "Claimant Trust Beneficiaries." But they ask the court, without any supporting facts or authority, to treat them as such and to order the Defendants to disclose not just information that

---

[63] A court may also raise the issue of res judicata or collateral estoppel *sua sponte* in dismissing a claim or cause of action "in the interest of judicial economy where both actions were brought before the same court" or "where all of the relevant facts are contained in the record and all are uncontroverted." *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 264-65 (5th Cir. 2018) (cleaned up).

[64] Complaint ¶ 88.

Claimant Trust Beneficiaries are entitled to under the Plan and CTA but also information and an accounting that is not otherwise available even to the Claimant Trust Beneficiaries. To be clear, the Plaintiffs are asking this court to disregard the unambiguous and plain terms of the CTA and the Plan and grant the relief sought in Count I based upon equitable considerations.

Ignoring for a moment the Defendants' Rule 12(b)(6) "failure to state a claim upon which relief may be granted" argument, this court will first focus on Defendants' argument that Plaintiffs' claim for equitable relief in Count I is moot and, thus, nonjusticiable and must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Highland and the Claimant Trust take the position that their filing of the Pro Forma Adjusted Balance Sheet in July 2023, nearly two months after the filing of the Complaint on May 10, 2023, renders moot the Plaintiffs' request for equitable relief in Count I because the balance sheet provided Plaintiffs (and all parties) with the very information Plaintiffs are asking for in Count I. Thus, "the issue presented in Count I is no longer 'live.'"[65] Highland and the Claimant Trust add that the Post-Confirmation Reports, filed on the bankruptcy court docket in April 2023, prior to the Complaint being filed, "similarly disclose the financial information requested in Count One, including, *inter alia*, the cash and the identification of remaining assets." In essence, Defendants argue that the filing of these two items "ha[s] thus eliminated the 'actual controversy' at the core of Count One, and there is no conceivable relief available to Plaintiffs through this claim that has not already been provided."[66]

Plaintiffs argue that Highland and the Claimant Trust's mootness argument is exactly backward—that the filing of the Pro Forma Balance Sheet has not eliminated the "actual

---

[65] MTD Brief ¶ 25.

[66] MTD Brief ¶¶ 25-26.

controversy" between the parties precisely ***because of*** the Defendants' persistent "contentions and arguments that the Balance Sheet is not conclusive [as to the issue of whether Plaintiffs' Contingent Trust Interests are likely to vest]" – that whether assets exceed liabilities at any one given point in time and whether Plaintiffs appear to be "in the money" is irrelevant to the question of vesting under the terms of the Plan and CTA.[67]  Plaintiffs point out that Defendants have argued that Plaintiffs should not rely on the balance sheet, which, again, gives pro forma values as of May 31, 2023, adding that it is not determinative of whether Plaintiffs Contingent Trust Interests will likely vest at any point in the future because, under the terms of the CTA and Plan, Plaintiffs' unvested, contingent interests in the Claimant Trust will vest if, and only if, the Claimant Trustee files the GUC Payment Certification, certifying that the Class 8 general unsecured claims and Class 9 subordinated claims, the Claimant Trust Beneficiaries under the CTA who are entitled to distributions of the Claimant Trust assets and have other rights under the terms of the CTA, have been indefeasibly paid in full (including as to Class 8, accrued and unpaid post-petition interest), all disputed claims in Classes 8 and 9 have been resolved, ***and*** certain other obligations – primarily, the Claimant Trust's significant indemnity obligations – have been satisfied.  Because it is impossible to know or predict, in particular, what the indemnity obligations and the professional fees will be going forward, it would be just as impossible for the court to make any determination of whether Plaintiffs are "in the money" or whether their contingent interests are likely to vest.

This court cannot conclude that Defendants' production and filing of the point-in-time Pro Forma Balance Sheet (as of May 31, 2023) and the Post-Confirmation Reports has rendered Plaintiffs' current request in Count I for information and an accounting moot.  A balance sheet and financial disclosures generally are fluid concepts.  Relevant information in early 2023 may not

---

[67] *See* Response ¶¶ 17-18.

remain relevant in mid-2024.  Thus, Plaintiffs' equitable claim is not mooted by these earlier filed

items, and the Count I request is justiciable.  Accordingly, Defendants' motion to dismiss Count I

under Rule 12(b)(1) for lack of subject matter jurisdiction will be denied.  This determination

simply means that the court has subject matter jurisdiction here to address Count I.  Thus, this

court will now consider whether Plaintiffs have stated a claim (in Count I) upon which relief can

be granted under Rule 12(b)(6) standards.

**b)  Plaintiffs have failed to state a claim upon which relief can be granted in Count I; dismissal of Count I is proper under Rule 12(b)(6).**

As noted above, dismissal under Rule 12(b)(6) is proper if, based upon the facts alleged

in the Complaint, taken as true, as well as any judicially noticed facts, "it appears certain that the

[Plaintiffs] cannot prove any set of facts that would entitle [them] to the relief [they] seek[ ]."  *Test

Masters*, 428 F.3d at 570 (quoting *C.C. Port, Ltd.*, 61 F.3d at 289).   As noted above, in Count I,

Plaintiffs, as holders of unvested contingent interests in the Claimant Trust, seek an order from

this court compelling Defendants "to provide information regarding the Claimant Trust assets,

including the amount of cash and the remaining non-cash assets," and a detailed accounting of "all

transactions that have occurred since [an alleged] wall of silence was erected, and all liabilities."

As also noted above, Plaintiffs have acknowledged[68] that their contingent interests in the Claimant

Trust have not vested, and Plaintiffs are not Claimant Trust Beneficiaries; thus, under the terms of

the CTA, they are not entitled to the information and accounting they seek and do not have even

the limited information rights afforded to the Claimant Trust Beneficiaries under the CTA.[69]

The court takes judicial notice of its Order Denying Leave to Bring Claims Pertaining to

Claims Trading, in which the court found that HMIT, as a holder of a "Contingent Claimant Trust

---

[68] *See supra* p.10.

[69] *See supra* pp. 7-9 (discussion of information rights under the terms of the CTA).

Interest" was not a Claimant Trust Beneficiary, who, under the terms of the CTA and Delaware law, are the "beneficial owners" of the Claimant Trust, and rejected HMIT's argument that its Contingent Claimant Trust Interest makes it a contingent beneficiary of the Claimant Trust, which, in turn, makes it a present "beneficial owner" under Delaware trust law.[70]   The court concluded that, under Delaware Trust law, "HMIT's status as a 'beneficiary' of the Claimant Trust is defined by the CTA itself, pure and simple" and that under the terms of the CTA, the holders of Contingent Trust Interests have no rights under the agreement and will not "be deemed 'Beneficiaries'" under the CTA "'unless and until' they vest in accordance with the Plan and the CTA" and that "the court does not have the power to equitably deem HMIT's Contingent Trust Interest to be vested based on HMIT's unsupported allegation of wrongdoing on the part of . . . the Claimant Trustee."[71]

Now, as before, the court finds and concludes that under the terms of the CTA and Delaware law, Plaintiffs are not beneficiaries or "beneficial owners" of the Claimant Trust who would be entitled to assert rights under the CTA.  The court specifically rejects an argument of Plaintiffs that Delaware trust law does not define "beneficiary," so the court should ignore the terms of the CTA and look to the definition of "beneficiary" under the Restatement (Third) of Trusts, under which they would be considered  "beneficiaries" of the Claimant Trust, albeit a contingent beneficiary, who would be entitled under Delaware law to the relief they are requesting. The Claimant Trust is a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "Trust Act," Chapter 38 of Title 12 of the Delaware Code), and the Trust Act does define "beneficial owner" and uses that term exclusively to refer to the beneficiaries of a Delaware statutory trust.  Specifically, under the Trust Act, a statutory trust's "beneficial owners" are "any

---

[70] Order Denying Leave, 77-78.

[71] *Id.*, 78.

29

owner[s] of a beneficial interest in a statutory trust, the fact of ownership ***to be determined and
evidenced . . . in conformity to the applicable provisions of the governing instrument of the
statutory trust***."[72]   Thus, the question of whether Plaintiffs are "beneficiaries" of the Claimant
Trust is (as the court concluded in the Order Denying Leave to Bring Claims Pertaining to Claims
Trading) determined "by the CTA itself, pure and simple."   And, under the terms of the CTA,
"Claimant Trust Beneficiaries" is defined to exclude Plaintiffs, who hold Class 10 and 11 unvested,
contingent interests in the Claimant Trust, unless and until the GUC Payment Certification has
been filed by the Claimant Trust.   Until then, Plaintiffs "shall not have any rights under [the CTA]"
and will not "be deemed 'Beneficiaries' under [the CTA]."[73]

Plaintiffs ask the court to ignore the plain terms of the CTA and to grant them the relief
they have requested on an equitable basis because they "are unable to determine whether their
Contingent Claimant Trust Interests may vest into Claimant Trust Interests."[74] But, they have not
alleged any set of facts that would entitled them to equitable relief either.   The court makes the
same observation regarding Plaintiffs as it made in its Order Denying Valuation Motion:  It appears
that Plaintiffs "may be frustrated that they did not negotiate or obtain the same oversight rights as
the actual Claimant Trust Beneficiaries in the Plan and CTA."   The Plan with the incorporated
CTA was confirmed over three years ago now, and neither of the Plaintiffs objected to or appealed
the terms of the Plan or CTA that dictate oversight rights.[75] The Fifth Circuit, in September 2022,

---

[72] 12 Del. C. § 3801(a) (emphasis added).

[73] *See, e.g.*, Plan, Art. I.B.44; CTA §§ 1.1(h), 5.1(c).

[74] Complaint ¶ 83.

[75] HMIT did not file an objection to confirmation of the Plan and did not appeal the Confirmation Order. Dugaboy
filed an objection to confirmation and appealed the Confirmation Order, but did not object to the terms of the CTA
that limited oversight and information rights to "Claimant Trust Beneficiaries" and specifically excluded the holders
of the unvested, contingent interests in the Claimant Trust – such as Plaintiffs – from having any rights under the CTA
unless and until their interests vested.  The CTA was filed prior to the confirmation hearing and Plaintiffs and other
parties could have objected to the terms of the Plan or CTA; they could have complained then about any lack of
transparency, oversight, and information rights they believe existed under the terms of the CTA.  They did not.

affirmed the Confirmation Order and the terms of the Plan and its incorporated documents, including the CTA, in all respects other than striking certain exculpations. *NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419 (5th Cir. 2022). As was the case when the court entered its Order Denying Leave to Bring Claims Pertaining to Claims Trading, "[i]t is undisputed that HMIT's [and Dugaboy's] Contingent Trust Interest[s] ha[ve] not vested under the terms of the Plan and the CTA, and the court does not have the power to equitably deem HMIT's [and Dugaboy's] Contingent Trust Interest[s] to be vested."[76] The court did not have that power back in August 2023 (when it entered the Order Denying Leave to Bring Claims Pertaining to Claims Trading), and the court does not have that power now. Equitable relief is not available where, as here, the parties' rights and obligations at issue are set forth in the Plan and the CTA. *See In re Am. Home Mortg. Holdings, Inc.*, 386 Fed. Appx. 209, 212-13 (3d Cir. 2010) (affirming bankruptcy court's denial of equitable relief to distributions under trust documents where, among other things, the trust documents controlled distribution of monthly payments, and the Trust Certificate "cannot be rewritten on equitable grounds," and noting "[i]n interpreting the provisions of the Trust Documents, we apply Delaware law, which instructs that a party is bound by the plain meaning of clear and unequivocal contract terms.").

Plaintiffs' make an argument that an implied covenant of good faith and fair dealing under Delaware law necessarily means that the terms of the CTA that govern the parties' rights, here, including the information rights and rights to an accounting from the Claimant Trustee that Plaintiffs are seeking in Count I, can be overridden here. The court disagrees. Courts will not use the implied covenant of good faith to override the rights and responsibilities that were bargained for in a trust agreement. *See IKB Int'l S.A. v. Wilmington Trust Co.*, 774 F. App'x 719, 727-28 (3d

---

[76] Order Denying Leave to Bring Claims Pertaining to Claims Trading, 78.

Cir. 2019)(citing *Homan v. Turoczy*, 2005 WL 2000756 (Del. Ch. Aug. 12, 2005)); *see also*

*Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) ("Existing contract terms

control such that implied good faith cannot be used to circumvent the parties' bargain or to create

a free-floating duty unattached to the underlying legal document.") (cleaned up); *Gilbert v. El Paso*

*Co.*, 575 A.2d 1131, 1143 (Del. 1990) (holding that the "subjective standards [of good faith and

fair dealing] cannot override the literal terms of an agreement.") (citation omitted).  Because the

terms of the CTA expressly address the Claimant Trustee's duties to provide, and parties' rights

to receive, information and an accounting with respect to the Claimant Trust, and those duties do

not inure to the benefit of the Plaintiffs, who are not Claimant Trust Beneficiaries, the implied

covenant of good faith and fair dealing cannot be used by the Plaintiffs or the court to compel the

Claimant Trustee to disclose the information or provide the accounting as requested in Count I.

After considering the facts alleged in the Complaint, taken as true, and the facts and record

of which the court has taken judicial notice, the court has determined that Plaintiffs cannot prove

any set of facts that would entitle them to the relief they seek.  Thus, dismissal of their claim for

disclosure of additional information and for an accounting in Count I under Rule 12(b)(6) is proper.

2. *Count II – Request for Declaratory Relief*

In Count II of the Complaint, Plaintiffs seek a declaratory judgment and "determination

from the Court of the relative value of the Claimant Trust assets compared to the bankruptcy estate

obligations," but this is only if "Defendants are compelled to provide information about the

Claimant Trust assets" – in other words, this Count II request is conditioned on the court granting

the equitable relief Plaintiffs seek in Count I.[77]

---

[77] Complaint ¶¶ 89-92.

Defendants seek dismissal of Count II under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Before the court can address Defendants' Rule 12(b)(6) motion, the court must first determine whether the claim for declaratory relief in Count II is justiciable such that the court has constitutional jurisdiction – subject matter jurisdiction – to consider and rule on the merits of Plaintiffs' claim.[78]  As noted above,[79] Plaintiffs' request for declaratory relief in Count II is clearly predicated on the court first granting the relief requested in Count I:  ordering the Defendants to disclose information about the Claimant Trust assets and liabilities (beyond what is contained in the Pro Forma Balance Sheet) and to provide to Plaintiffs a detailed accounting of all transactions involving the Claimant Trust.  The court has concluded that Plaintiffs are not entitled to the information and accounting they have requested in Count I and that Count I should, thus, be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because Plaintiffs' request for declaratory relief in Count II is predicated on the court granting the relief requested in Count I and the court has denied that relief, Count II has now been rendered moot or, at least, not ripe such that it is not justiciable. *See American Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 827 (2024) (where the Fifth Circuit affirmed the district court's Rule 12(b)(1) dismissal of a claim to reinstate an agreement as moot, where plaintiff's claim was predicated on a finding by the district court that the agreement was valid and

---

[78] Even though Defendants did not raise the issue of subject matter jurisdiction with respect to Count II, the court has an independent duty to assure itself that it has subject matter jurisdiction over a claim or cause of action before it addresses the merits of the claim under Rule 12(b)(6). *See supra* pp. 18-19; *see also Abraugh v. Altimus*, 26 F.4th 298, 304 (2022) (federal courts have a "constitutional duty . . . to decline subject matter jurisdiction where it does not exist—and that is so whether the parties challenge Article III standing or not.").

[79] *See supra* note 26.

enforceable, and the Fifth Circuit agreed with the district court that the agreement was unenforceable).[80]

In summary, the court has determined that Defendants' request for declaratory relief in Count II is not justiciable and, as such, Count II must be dismissed pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction.  Anything this court might conclude with respect to Defendants' motion to dismiss Count II under Rule 12(b)(6) would be an impermissible advisory opinion, so the court will not address Defendants' arguments that Count II should be dismissed for failure to state a claim upon which relief can be granted.

3. _Count III – Request for Declaratory Relief_

In Count III of the Complaint, Plaintiffs seek a declaratory judgment and determination, "[i]n the event that the Court determines that the Claimant Trust assets exceed the obligations of the bankruptcy estate in an amount sufficient so that all Allowable Claims may be indefeasibly paid . . . that the conditions are such that their Contingent Claimant Trust Interests are likely to vest into Claimant Trust Interests, making them Claimant Trust Beneficiaries."[81]

Defendants argue that the court should dismiss Count III under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that their request for declaratory relief in Count III is not justiciable because it is moot and otherwise seeks an impermissible advisory opinion.  Defendants also argue that, if the court determines that it does have subject matter jurisdiction over Plaintiff's claim for declaratory relief in Count III, Count III should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, including on the ground that Plaintiffs

---

[80] Although Defendants did not argue in their briefing that Count II was not justiciable and so must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, in so many words, Defendants did argue during oral argument that "Count II must . . . be dismissed because it depends on Highland being 'compelled to provide information about the Claimant Trust assets.' . . . So if the Court doesn't compel Highland, the Court has no ability to make the declaration that's sought." Feb. 14, 2024 Hrg. Trans., 17:9-13.

[81] _Id._ ¶¶ 93-95, at 27.

are collaterally estopped from asserting the claim for declaratory relief in Count III. The court agrees with Defendants that Count III is not justiciable and that Count III should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and, thus, the court does not have jurisdiction to issue any pronouncement regarding the merits of Plaintiffs' claim for declaratory relief in Count III (and so it will not address Defendants' motion to dismiss pursuant to Rule 12(b)(6) with respect to Count III).

Similar to Plaintiffs' request for declaratory relief in Count II, Plaintiffs' request for declaratory relief in Count III is a contingent request – this one being predicated on the court first granting the declaratory relief in Count II, which, itself, is predicated on the court granting the equitable relief requested in Count I. Because Counts I and II are being dismissed for failure to state a claim and lack of subject matter jurisdiction, respectively, Plaintiffs' claim for declaratory relief in Count III is, thus, rendered not justiciable. That Counts II and III fall, if Count I falls, is inherent in the way Plaintiffs framed their claims and causes of action in the Complaint. Because Plaintiffs are not entitled to the information and accounting they are requesting in Count I, Plaintiffs' claims for declaratory relief in Counts II and III are rendered moot and/or not ripe and, thus, not justiciable. Plaintiffs' request for a declaratory judgment in Count III is not ripe for adjudication for the additional reason that Plaintiffs are asking the court to issue an opinion based on a set of "hypothetical, conjectural, conditional" facts "or based upon the possibility of a factual situation that may never develop" – the "likely" vesting of Plaintiffs' contingent interests in the Claimant Trust, making them Claimant Trust Beneficiaries. This is something federal courts are not permitted to do, even in the context of a request for declaratory relief (as is the case here with

Counts II and III).[82]  The court finds and concludes that Plaintiffs' claim for declaratory relief in

Count III is not justiciable and thus must be dismissed pursuant to Rule 12(b)(1) for lack of subject

matter jurisdiction.

This being the case, the court, as it must, declines to address the merits of whether Count

III should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be

granted (including based on Defendants' collateral estoppel argument).

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Count I of the Complaint for lack

of subject matter jurisdiction pursuant to Rule 12(b)(1), be, and hereby is, **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs have failed to state a claim upon which relief

can be granted in Count I of the Complaint, and thus Count I of the Complaint is **DISMISSED**

pursuant to Rule 12(b)(6);

**IT IS FURTHER ORDERED** that Count II of the Complaint is not justiciable and that,

pursuant to Rule 12(b)(1) and Rule 12(h)(3), Count II of the Complaint is **DISMISSED** for lack

of subject matter jurisdiction;

**IT IS FURTHER ORDERED** that Count III of the Complaint is not justiciable and that,

pursuant to Rule 12(b)(1), Count III of the Complaint is **DISMISSED** for lack of subject matter

jurisdiction.

### ###*End of Memorandum Opinion and Order*###

---

[82] *See Val-Com Acquisitions*, 434 F. App'x at 395-96; *see also Boyd Veigel*, 575 F. App'x at 396 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (where the Fifth Circuit discusses the ripeness doctrine in the context of declaratory judgment actions and states that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").